

**FILED**
**Jun 12, 2020**
**12:25 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Mary Gillum | ) Docket No. 2019-07-0191 |
| | ) |
| v. | ) State File No. 32026-2018 |
| | ) |
| Dollar General Corporation | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Amber E. Luttrell, Judge | ) |

---

### Affirmed and Remanded

The employee alleged a bag of dog food fell on her at work, resulting in injuries to her neck and shoulder. Following an expedited hearing, the trial court determined that the opinion of the authorized treating physician was sufficient to establish that the employee would likely prevail at a hearing on the merits and ordered the employer to provide a panel of physiatrists for nonoperative treatment for her cervical strain as recommended by the authorized physician. The trial court additionally determined that the employee was entitled to eighteen days of temporary disability benefits. The employer has appealed. We find no merit in the issues raised by the employer, and we affirm the trial court's determination and remand the case.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

James H. Tucker, Jr., Nashville, Tennessee, for the employer-appellant, Dollar General Corporation

Mary Gillum, Bruceton, Tennessee, employee-appellee, pro se

### Factual and Procedural Background

Mary Gillum ("Employee") was employed by Dollar General Corporation ("Employer") as an Assistant Store Manager. She contends that on April 2, 2018, she was moving a rolltainer of pet food when a bag of dog food fell on her left shoulder and injured

1

her shoulder and neck.[1] The record does not include a detailed description of when the incident occurred, other than during the course of Employee's work on April 2, 2018. An April 23, 2018 letter from Employee's attorney at the time, written to provide Employer with notice of Employee's injury, stated that Employee was injured "when a 20-pound bag of Gravy Train dog food fell off the top of a [rolltainer] onto her left shoulder."[2] Similarly, Employee's March 2019 petition for benefits states that she "was moving a [rolltainer] of dog food when a 20-pound bag of dog food fell from the top 7 feet onto [her] left shoulder." An affidavit Employee filed in support of her request for an expedited hearing in December 2019 states that she "was pulling a [rolltainer] out of pet food and some bags of dog food fell on [her] left shoulder."

Employee was the only witness to testify in person at the expedited hearing. She described the incident as follows:

> I was working fine, and then all of a sudden I had to go in back and get, you know, some stuff out and start putting stuff on shelves. I grabbed a [rolltainer] of pet food.
>
> . . . .
>
> And when I pulled it out of the big ole mess that we had back there, one of the bags of dog food fell on my left shoulder.

A written declaration, as allowed in accordance with Rule 72 of the Tennessee Rules of Civil Procedure, signed by Employer's Senior Claims Representative for its Risk Management Department, asserted that Employer "did not carry 20-pound bags of Gravy Train dog food" on April 2, 2018. Further, the declaration stated that the claims representative "reviewed video footage recorded on April 2, 2018," and that "[t]he footage shows that [Employee] did not operate a [rolltainer] while at work on April 2, 2018." Employer offered no other witness testimony at the expedited hearing.

Employee sought medical care on the date of the alleged incident. She testified that after the incident she "started working a little bit and then [she] started hurting really bad and [she] was like, okay, something's really wrong." She further testified:

> Well, I got off work. I did what I could. I didn't mop the floor or nothing [sic] that day because I was hurting. I got off work. I went and I messaged Amber [Pilcher], my boss, and I told her I got off work.

---

[1] The record does not include information describing a "rolltainer." It is spelled in varied ways in the record and appears to be a cart on which products may be loaded and transported inside Employer's facility.

[2] On September 12, 2019, an order was entered allowing Employee's attorney to withdraw his representation of Employee. Employee has been self-represented since the entry of the order.

. . . .

> I went to the doctors and they gave me some medicine and told me to stay off work for a while. And that's what happened.

The record includes several medical documents that address Employee's shoulder and neck complaints, some of which pre-date Employee's alleged April 2, 2018 work injuries. On April 2, 2018, the day Employee alleges to have injured her shoulder and neck, she presented to Bruceton Clinic complaining of "[l]umbar pain with radiation down left leg," and "[a]cute pain of left shoulder." The record of the April 2 visit notes that Employee "presents for a [r]echeck of joint pain" and states that "[s]ymptoms are located in the lower back and left shoulder (was lifting something and heard a pop. 03/30/2018)." According to the report, Employee stated that the onset of her pain "was year(s) ago." The report additionally states "[t]here is no known event that preceded symptom onset." Further, the document noted that Employee

> reports that the left shoulder pain is new. States that on 03/30/2018 she was lifting something and felt a pop. States that pain has been severe since. States that this is not workers['] comp.

The record of the April 2 visit includes various time entries, beginning with 6:23 AM. For example, beside entries for "Health Maintenance History" and "Diagnostic Studies History" the time entry is 6:26 AM. For entries identified as "Allergies" and "Medication History" the stated time is 8:02 AM. Consistent with these time entries, a LabCorp report dated April 6, 2018 indicates that specimens were collected from Employee on April 2, 2018 at "0823 Local." The record on appeal gives no indication of the time of day Employee alleges the April 2 incident occurred.

The record also includes medical documents from Camden General Hospital's Emergency Department dated April 4, 2018. According to those records, Employee presented on the evening of Wednesday April 4 "with neck injury and neck pain. The onset was reported to be two days ago[,] . . . possibly related to heavy lifting of dog food on [T]hursday at work." In another location on these records, the "Primary Pain" is identified as being in the left shoulder with "onset of symptoms Friday 03/30/2018." Addressing Employee's subjective complaints, the emergency department records indicate Employee came to the emergency room with complaints of left shoulder pain "with onset of symptoms approx[imately] 6 days ago," and those records state that "upon questioning [patient] about possible injury [patient] states that she dropped a 50lb bag of dog food on it at work prior to onset of pain." These records further indicate Employee stated that her pain radiates from her shoulder down to her fingertips, and that "pain presented 6 days prior with worsening of symptoms and a progression down to fingertips." Additionally, these records state that Employee "was seen at [primary care physician's] office on Friday 03/30/18," that the doctor prescribed Baclofen and a Medrol dose pack, and that Employee

3

reported "she has been taking meds as prescribed but did not get meds filled until Monday 04/02/18."

X-rays taken on April 4, 2018 evidenced "moderately advanced degenerative changes" in the mid and lower cervical spine "with discogenic disease, spondylosis and facet arthropathy." A cervical MRI performed on April 10, 2018 revealed cervical spondylosis with spinal canal stenosis and neural foraminal narrowing.

Employee was seen one month after the alleged incident by Dr. William Scott for a neurological consultation. On May 3, 2018, he recorded a history of a "female who several months ago was at work when a 50 lb ba[g] of material fell on her left shoulder." Dr. Scott's report noted that the April 10, 2018 MRI "reveals quite severe spondylosis throughout the cervical spine . . . [and] mild to moderate disc bulging across the mid lower cervical spine." His report stated that Employee's disc bulges "do cause mild approaching moderate canal and neural foraminal stenosis." Dr. Scott concluded that "in the absence of symptomology correlating with nerve root impingement, [he] would not recommend surgery at the current time." Employee returned to the Bruceton Clinic on May 23, 2018. The report of that visit essentially reproduced the information in the report of the April 2, 2018 visit.

In August 2018, Employer provided Employee a panel of doctors from which she selected Dr. Blake Garside. Employee saw Dr. Garside on one occasion, October 17, 2018. The report states that Employee was seen for an independent medical evaluation. However, at the expedited hearing the parties stipulated that Dr. Garside was the authorized treating physician selected from a panel of physicians. Dr. Garside's report noted that "[g]reater than 430 pages of medical records" were provided and reviewed, including those from Bruceton Clinic, Camden General Hospital, and Dr. Scott. Dr. Garside's report included the following:

> According to the records provided, [Employee] states that on April 2, 2018, she was pulling on a [rolltainer] at work in Dollar General and 2 bags of dog food fell off and struck her on the neck and posterior left shoulder. According to [Employee], these weighed approximately 30 to 40 pounds. Records at Bruceton Clinic said that she had initially felt a pop in her shoulder on March 30, 2018. She stated that the left shoulder pain was new. She presented at the Camden General Hospital Emergency Room on April 4, 2018, complaining of neck pain. She provided a history of pain with lifting dog food at work and shoulder pain after dropping a dog food bag approximately 6 days prior to this.

Dr. Garside noted that Employee complained of persistent pain and discomfort in her posterior shoulder and neck, radiating down her arm. He reported that Employee had "numbness down her arm and into her hand," but that she denied "any problem

4

including . . . numbness or tingling [preceding] the injury of April 2, 2018," adding that "[s]he states that she has had no similar symptoms, only low back pain since 2010." However, Dr. Garside also stated in his report that Employee's "past medical history and records provided for review suggest previous complaints of left hand and arm numbness and tingling dating back to 2015." He noted that Employee had been seen in 2015 at Bruceton Clinic with a "7-month history of intermittent moderate left upper extremity pain with numbness and tingling," adding that the family nurse practitioner at the clinic "also noted pain in the left periscapular region radiating to her hand and numbness in [Employee's] forearm." In addition, Dr. Garside noted that Employee was evaluated by Dr. Ronald Bingham in January 2016 and underwent electrodiagnostic testing that suggested a left cervical radiculopathy for which Dr. Bingham recommended Employee undergo "a short course of steroids and physical therapy." The medical records admitted into evidence included the records identified by Dr. Garside as evidencing Employee's complaints of left upper extremity pain, numbness, and tingling in 2015 and 2016.

Dr. Garside's assessment noted chronic cervical spondylosis with acute cervical strain and left scapular pain. In his report, he stated that Employee "has a recent history of acute injury, in which she describes 2 bags of dog food struck her in the back of her neck with increase in her symptoms." Addressing causation, his report included the following:

> Whereas, I do not feel these have caused her underlying pre-existing spondylosis and degenerative changes, she has an acute increase in her pain, likely related to the traumatic event. She has seen Dr. Scott, who does not feel there is any surgical treatment that is indicated and previously recommended consideration of trigger point injections. I would agree with this recommendation and also recommend evaluation by a physiatrist for treatment of the ongoing acute pain and with hopes to return her to her baseline status.

> In my opinion, [Employee's] pre-existing cervical spondylosis is not primarily related to her work injury. However, her mechanism of injury is consistent with an acute strain of her cervical spine that would likely benefit from continued nonoperative management such as physical therapy, anti-inflammatory, or trigger point injections for return to her baseline status.

The issues raised at the expedited hearing included the compensability of Employee's claim and Employee's entitlement to medical and temporary disability benefits. Following the March 2020 evidentiary hearing, the trial court concluded that Dr. Garside's opinion regarding Employee's acute cervical strain and need for nonoperative treatment was "sufficient, at [the] expedited hearing stage, to show she is likely to prevail in her request for medical benefits." "Further," the trial court stated, "the Court holds [Employee] established entitlement to see a physiatrist, as recommended by Dr. Garside."

5

The court ordered Employer to provide a panel of physiatrists for nonoperative treatment for Employee's acute cervical strain.

Addressing Employee's request for temporary disability benefits, the trial court observed that Employee's primary care providers took her off work through April 20, 2018, and the court ordered Employer to pay temporary disability benefits from the date of Employee's injury to April 20, 2018, at Employee's stipulated weekly rate. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2019). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2019).

**Analysis**

Employer presents two issues asserting the trial court erred in determining Employee would likely prevail at trial. First, Employer contends Employee "failed to produce any evidence of an injury by accident that arose primarily out of and in the course and scope of employment at the expedited hearing." Second, Employer asserts that Dr. Garside's report "does not sufficiently show Employee's employment contributed more than fifty percent in causing her injury, considering all causes." As addressed below, we find no merit in either issue.

*Whether Employee Presented Evidence of an Injury by Accident*

Employer contends Employee "provided no evidence whatsoever regarding Dr. Garside's examination and findings." Employer acknowledges in its brief that the parties "agreed to the admissibility of medical records including Dr. Garside's examination notes at the beginning of the expedited hearing." However, Employer asserts that, thereafter,

6

"Employee made no effort to actually introduce those records into evidence," and that "[b]ased on Employee's failure to present any evidence regarding causation, the trial court erred in concluding that she was likely to prevail at a hearing on the merits."

Addressing the exhibits at the outset of the expedited hearing, the trial court first questioned whether Employee wanted to make the affidavit she submitted in support of her request for a hearing part of the documentary evidence to be considered at the expedited hearing. She responded affirmatively, and Employer advised the court it had no objection to the document being part of the documentary evidence. The court then turned to the medical records and questioned the parties about an indexed set of medical records that Employee's former counsel had previously submitted. Counsel for Employer represented that the medical records had been sent to Employee and that the parties had agreed to the records. Upon questioning by the court, however, Employee objected to the relevance of medical records pre-dating her alleged injury. The trial court overruled Employee's objection and allowed into evidence the records pre-dating her alleged injury, explaining that the records were signed by the medical providers and, therefore, met the "qualification for admissibility," and that the records were relevant because they addressed Employee's preexisting medical conditions.

The trial court then addressed each of the exhibits identified in Employer's amended exhibit list that Employer indicated "may be presented" at the hearing. Each document was sequentially marked as Exhibit 2 through Exhibit 10 for purposes of the expedited hearing before the trial court returned to the medical records and identified them as "Exhibit 11, collective." The court stated that it "shows those [medical records] are the exhibits that the parties have previously agreed to put in today," to which Employer's counsel responded, "[t]hat's correct." Accordingly, the record is clear that the medical records were made exhibits and were admitted into evidence at the outset of the expedited hearing. There was no need for either party to more formally offer the exhibits into evidence during the course of the hearing.

*The Sufficiency of the Report of Dr. Garside's Evaluation*

Employer asserts that Dr. Garside's report "does not sufficiently show Employee's employment contributed more than fifty percent in causing her injury, considering all causes." It contends the trial court erred "in disregarding the more than fifty percent causation requirement of Tennessee Code Annotated section 50-6-104(14)(B)."

Tennessee Code Annotated section 50-6-102(14) defines "injury" and "personal injury" to mean "an injury by accident . . . arising primarily out of and in the course and scope of employment . . . ." Section 50-6-102(14)(B) provides that "[a]n injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." We have previously stated that a

7

physician does not have to couch his or her opinion in a rigid recitation of the statute, and that physicians "need not use particular words or phrases included in the statute to establish the requisite medical proof to succeed at trial." *Panzarella v. Amazon.com, Inc.*, No. 2015-01-0383, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (Tenn. Workers' Comp. App. Bd. May 15, 2017). What is necessary to succeed *at a hearing on the merits* is "sufficient proof from which the trial court can conclude that the statutory requirements of an injury as defined in section 50-6-102(14) are satisfied." *Id.* Here, the March 5, 2020 evidentiary hearing was an expedited hearing conducted pursuant to Tennessee Code Annotated section 50-6-239(d) and not a hearing on the merits as contemplated in section 50-6-239(c).

We have previously held that, at an expedited hearing, "an employee need not prove every element of his or her claim by a preponderance of the evidence to be entitled to temporary disability or medical benefits, but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Work. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). We have described an employee's burden of proof in an expedited hearing as a "lesser evidentiary standard" than the standard imposed by section 50-6-102(14). *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

In closing arguments, the trial court asked Employer whether Dr. Garside's opinions were sufficient to meet the lesser evidentiary standard applicable to expedited hearings. Employer responded that the applicable standard is whether Employee "can prevail at a full evidentiary hearing based upon the information that's been presented to the Court today." That standard, as argued by Employer, "is a 50.1 percent standard" that Employer asserted had not been met at the expedited hearing. Employer's argument fails to take into account prior opinions in which we have explained the "likely to prevail at trial" standard applicable at expedited hearings and how that standard differs from the ultimate burden of proof applicable at a trial on the merits. Employer does not assert that the evidence presented at the expedited hearing fails to support the trial court's determination that Employee is likely to prevail at trial, but essentially insists the applicable standard of proof at the expedited hearing is not a lesser evidentiary standard as we have previously held. We are unpersuaded by Employer's argument.

## Conclusion

For the foregoing reasons, we affirm the trial court's determinations and remand the case. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Mary Gillum | ) | Docket No. 2019-07-0191 |
| | ) | |
| v. | ) | State File No. 32026-2018 |
| | ) | |
| Dollar General Corporation | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Amber E. Luttrell, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 12th day of June, 2020.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| James H. Tucker, Jr. Denise Stevens | | | | X | jtucker@manierherod.com dstevens@manierherod.com |
| Mary Gillum | | | | X | driggersmonica@yahoo.com |
| Amber E. Luttrell, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*O. Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov